IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**TOMMY R. MCDANIEL**                                                                **PLAINTIFF**

**V.**                                                   **CAUSE NO. 4:10-CV-00154-CWR-LRA**

**TYSON FARMS, INC.**                                                         **DEFENDANT**

## <u>ORDER</u>

The above-styled cause is before the Court on the defendant's motion for summary judgment,[1] and after considering both parties' arguments and the subject matter at hand, the Court concludes that the motion must be granted.

The central question presented by this case is, as even the plaintiff admits,[2] a simple one. Tommy R. McDaniel (hereinafter "McDaniel") worked under contract as a "broiler producer" for Tyson Farms, Inc. (hereinafter "Tyson"). Under the terms of the contract, McDaniel would receive chickens and raise them to a specified size and weight in chicken houses on his property, and when the chickens reached the desired maturity, Tyson would send someone to retrieve the birds.

Gill Enterprises, Inc. (hereinafter "GEI") worked under a separate contract with Tyson to collect chickens from various producers for processing.[3] On June 19, 2008, pursuant to its

---

[1] Tyson Farms, Inc.'s Motion for Summary Judgment [Docket No. 27] (hereinafter "the Motion").

[2] Plaintiff's Brief in Support of Response to Defendant's Motions for Summary Judgment [Docket No. 31] (hereinafter "McDaniel's brief") at 3 ("This entire case truly revolves around the definition of the term 'representative.'").

[3] *See* Exhibit D to Motion for Summary Judgment [Docket No. 27-4] (hereinafter "McDaniel depo") at 13.

contract, GEI was collecting chickens on McDaniel's property[4] when McDaniel found that an important water valve had been turned off.[5] Irritated by the discovery, McDaniel told the chicken catcher "that I was going to shoot the next one that touched anything in my house besides the chickens."[6]

McDaniel then returned to his home on his all-terrain vehicle, "[g]ot my pistol and put it in my ATV and drove back" to the chicken house,[7] where GEI's employees still were collecting chickens. With his pistol collected, McDaniel parked his ATV at the site where his argument had taken place and "sat in that ATV till they were finished and gone"[8] with the pistol in plain view on the seat.[9] The chicken collection concluded without further incident.

The next day, several Tyson employees met with McDaniel to discuss the previous day's altercation.[10] At the time of the episode, the contract under which Tyson and McDaniel operated contained a default provision that permitted Tyson to terminate the agreement for "[u]se of

---

[4] The record contains no hint that GEI's arrival was unexpected. In an affidavit supplied by Tyson, the company's Live Complex Manager described GEI's operation on McDaniel's property "a routine catch." Exhibit A to Motion for Summary Judgment [Docket No. 27-1] at 2. McDaniel himself testified at his deposition that when GEI's employees arrived, he was "there to greet them[.]" Exhibit D to Motion for Summary Judgment [Docket No. 27-4] (hereinafter "McDaniel deposition") at 15.

[5] McDaniel deposition at 19-20.

[6] McDaniel deposition at 20.

[7] McDaniel deposition at 23.

[8] McDaniel deposition at 23.

[9] McDaniel deposition at 23-24.

[10] McDaniel deposition at 31.

abusive and threatening language with or threat of physical harm to [Tyson]'s representatives."[11] McDaniel did not deny his role in the incident[12] but apologized.[13]

By letter dated June 25, 2008, Tyson terminated McDaniel's contract.[14]

On September 13, 2010, McDaniel brought suit against Tyson in United States District Court for (1.) tortious breach of contract, (2.) detrimental reliance, (3.) express breach of contract, (4.) violation of the Packers and Stockyards Act, and (5.) intentional and/or negligent infliction of emotional distress.[15]

Tyson moved for summary judgment on June 15, 2011.

## STANDARD OF REVIEW

Although motions for summary judgment are filed frequently, not every case is suitable for such disposition. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[16] When confronted with these motions, this Court focuses on "genuine" disputes of "material" facts. An issue is genuine "if the evidence supporting its resolution in favor of the party opposing summary judgement, together with an inference in such party's favor that the

---

[11] Exhibit C to Motion for Summary Judgment [Docket No. 27-3] (hereinafter "the Contract") at 2.

[12] McDaniel deposition at 31.

[13] McDaniel deposition at 38.

[14] McDaniel deposition at 39-40.

[15] Complaint [Docket No. 1].

[16] Fed. R. Civ. P. 56(a).

3

evidence allows would be sufficient to support a verdict in favor of the party."[17] A fact is material if it is one which might affect the outcome of the suit under the governing law. Factual disputes that are irrelevant or unnecessary will not be considered.[18] Likewise, unsubstantiated assertions are not competent summary judgment evidence.[19]

The jury has the responsibility to assess the probative value of the evidence. As a consequence, a court must step back and refrain from making credibility determinations, and it must not weigh evidence or draw from the facts legitimate inferences for the movant.[20] This Court is ever mindful that although a useful device, summary judgment "must be employed cautiously because it is a final adjudication on the merits."[21]

But in the case at bar, the parties's dispute regards the interpretation of a contract, and so long as the provisions concerned are not ambiguous, such disagreements present questions of law.[22]

---

[17] *Zisman v. Mason*, 2008 WL 879726, *3 (S.D. Miss. 2008) (citing *Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987).

[18] *Id*.

[19] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994).

[20] *Strong v. Dept. of Army*, 414 F. Supp. 2d 625, 628 (S.D. Miss. 2005).

[21] *Jackson v. Cain*, 865 F.2d 1235, 1241 (5th Cir. 1989); *Hulsey v. State of Texas*, 929 F.2d 168, 170 (5th Cir. 1991).

[22] *Dennis v. Searle*, 457 So. 2d 941, 945 (Miss. 1984). *See also Coleman v. Acceptance Indem. Ins. Co.*, 2009 WL 1873742, *3 (S.D. Miss. 2009) (insurance contract's interpretation presents question of law); *Avatar Exp., Inc. v. Chevron, U.S.A., Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (summary judgment an appropriate tool for dispute regarding terms of a lease agreement).

**JURISDICTION**

Because the questions now before the Court present issues arising purely under Mississippi law, a short comment regarding jurisdiction is appropriate.[23]

When McDaniel filed his Complaint, he invoked this Court's jurisdiction because his claim rested in part on the provisions of the Packers and Stockyards Act.[24] Although the remainder of his claims took root in state law, their character was "so related to claims in the action within [the Court's] original jurisdiction that they form[ed] part of the same case or controversy,"[25] and supplemental jurisdiction properly extended thereto. For that reason, original jurisdiction over the entire matter properly lay in federal court.[26]

However, as this Order discusses *infra*, McDaniel abandoned his Packers and Stockyards Act claim in response to Tyson's motion for summary judgment. "Ordinarily, when the federal claims are dismissed before trial, the pendent state claims should be dismissed as well."[27] But pendent jurisdiction may be exercised properly when such a decision is the result of "balancing the values of economy, convenience, fairness, federalism, and comity."[28] If the crossroads at which this case now finds itself not so deep into the litigation, or if any remaining matter posed a

---

[23] It is well established that federal courts must consider the question of subject-matter jurisdiction even if not raised by the parties, as is the case in the matter at hand. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 919 (5th Cir. 2001).

[24] 7 U.S.C. § 181, *et seq.*

[25] 28 U.S.C. § 1367(a).

[26] 28 U.S.C. § 1331.

[27] *Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989).

[28] *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992).

novel issue of state law, then this Court might be more hesitant to address the matter further. However, none of these issues persuades in favor of dismissal of the case at hand, nor does the goal of preserving judicial economy.[29] For these reasons, the Court exercises its discretion[30] to act pursuant to its pendent jurisdiction over the state-law claims.

## ANALYSIS

In his response to Tyson's motion for summary judgment, McDaniel expressly concedes the claims for detrimental reliance,[31] intentional and/or negligent infliction of emotional distress,[32] and violation of the Packers and Stockyards Act.[33] The only remaining claims are tortious breach of contract and express breach of contract.

The contractual provision in dispute between McDaniel and Tyson is the clause that permitted Tyson to hold McDaniel in default for "[u]se of abusive and threatening language with or threat of physical harm to [Tyson]'s representatives."[34]

McDaniel does not address Tyson's argument that McDaniel's conduct was threatening in character, and in his brief, McDaniel describes the argument in question as "a heated exchange between a GEI employee and Mr. McDaniel where at one point Mr. McDaniel *threatened* the

---

[29] *Id.* at 587.

[30] *Id.* at 585.

[31] Plaintiff's Brief in Support of Response to Defendants' Motions for Summary Judgment [Docket No. 31] (hereinafter "McDaniel brief") at 5.

[32] McDaniel brief at 5.

[33] McDaniel brief at 6.

[34] Contract at 2.

employee of GEI."[35] Moreover, according to McDaniel, "[t]his entire case truly revolves around the definition of the term 'representative.'"[36] Therefore, McDaniel does not appear to dispute that his conduct amounted to "[u]se of abusive and threatening language with or threat of physical harm."[37]

The only question remaining, then, is whether GEI's employees were Tyson's "representatives." Both parties agree that the decision must be guided by the familiar rule that courts "are bound to enforce contract language as written and [to] give it its plain and ordinary meaning if it is clear and unambiguous."[38]

Unlike the words "agent" or "employee," the term "representative" is not a contractual term to which a great deal of attention has been granted by Mississippi courts. That dearth of authority leaves this Court with little choice but to resort to even more elementary interpretive tools with which to define the word's scope.

McDaniel offers a narrow view of the term in which GEI's employees are not included. According to McDaniel, the Encarta World English Dictionary of 2009 defines the term, among other ways, as "somebody who speaks for others: somebody who speaks, acts, or votes on behalf of others[.]"[39] McDaniel goes on to recount that the Encarta entry for "representative" includes an adjective for the word: "acting on somebody's behalf: acting as somebody's agent, deputy, or

---

[35] McDaniel brief at 1 (emphasis added).

[36] McDaniel brief at 3.

[37] Contract at 2.

[38] *Mississippi Farm Bureau Cas. Ins. Co. v. Britt*, 826 So. 2d 1261, 1265 (Miss. 2002).

[39] McDaniel brief at 3-4 (quoting Encarta World English Dictionary (2009)).

delegate."[40] In McDaniel's view, "[m]erely because an entity enters into a contract with an individual to perform an action for the entity's benefit does not mean the individual is a representative of the entity. It only means the individual has agreed to perform an action for the entity's benefit, and not necessarily in the place of or on behalf of the entity."[41]

Tyson's view of the term is more expansive. Tyson notes that the Seventh Edition of Black's Law Dictionary defines "representative" as "one who stands for or acts on behalf of another,"[42] and that Webster's Dictionary paints the word "represent" as to "act in the place of or for" another.[43]

The contract itself offers no self-contained definition of the term, and if any contract between GEI and Tyson addressed the issue, then that evidence is not before the Court. However, Tyson points to the contract's occasional use of the term "employees" as proof that the term "representative" should be broadly defined; in Tyson's view, if the parties had meant to limit the reach of the "threats clause" to those person on Tyson's payroll, then the contract would have used the word "employee" instead of "representative." This is a persuasive argument.

Likewise, the Court is persuaded that the definitions offered by the parties – which, despite the differences with which Tyson and McDaniel frame them, are substantially identical – support Tyson's broad view of the term "representative." Each of the definitions memorialized

---

[40] McDaniel brief at 4.

[41] McDaniel brief at 4-5.

[42] Memorandum in Support of Tyson Farms, Inc.'s Motion for Summary Judgment [Docket No. 28] (hereinafter "Tyson brief") at 8.

[43] Tyson brief at 8.

by Black's, Webster's, and Encarta pays special attention to the representative's *acts* on behalf of another. The intricacies of expert chicken catching are, doubtlessly, incapable of being crystallized in a few short words, but if only one thing can be said of one who catches chickens at a company's request, it is that the catcher acts on the company's behalf.

A fourth dictionary definition, that encapsulated by the Oxford English Dictionary, denotes an expansive view of the term; in the view of the OED's drafters, "a person who stands for, speaks or *acts on behalf of another person or group of people*, typically in an official capacity," is a representative. Obviously, GEI was not contracted to represent Tyson in an official capacity, but the Oxford definition clearly provides for exceptions to that typical treatment.

McDaniel leans heavily on the appearance of the term "agent" in the Encarta definition. If the Court agreed that the term "agent" was synonymous with the word "representative" as it is used in the Contract, then McDaniel's view might well carry the day.[44] But ultimately, the Contract itself persuades against such an interpretation: the drafter of the threats clause chose the word "representative," not "agent." Without an indication that the parties intended to view the terms synonymously, this Court cannot project one word's meaning onto the other.

## CONCLUSION

No provision within the four corners of the Contract suggests that GEI was not Tyson's "representative," as that term is viewed within its plain meaning. Therefore, Tyson was fully within its rights to hold McDaniel in default and to terminate the contract.

---

[44] *Johnson v. Rao*, 952 So. 2d 151, 154 (Miss. 2007) (citations and quotations omitted) (observing that the Mississippi Supreme Court "has defined the word agent to include only agents vested with some general authority and discretion, and not to extend to mere employees having no independent powers.").

For that reason, Tyson's motion for summary judgment is granted, and a Final Judgment will be entered accordingly.

SO ORDERED this Sixth day of September 2011.

/s/ *Carlton W. Reeves*
Hon. Carlton W. Reeves
United States District Court Judge